UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


HANDYMAN SHOW, INC.                          CIVIL ACTION

V.                                          NO. 07-3611

EMMIS TELEVISION BROADCASTING, L.P.          SECTION "F"
d/b/a WVUE-TV CHANNEL 8 IN
NEW ORLEANS, and ABC INSURANCE COMPANY


ORDER AND REASONS

Before the Court is Emmis Television Broadcasting's Motion for Summary Judgment.  For the reasons that follow, the motion is DENIED.

**Background**

The plaintiff has sued for negligence and breach of contract for the loss of videotapes that were stored at the defendant's TV facilities and were destroyed during Hurricane Katrina.

The plaintiff and the defendant had a contractual relationship from at least 1993 until 2005.  There are only available two written contracts from this period: one in effect from October 2, 1993 through April 2, 1994 and one in effect from April 4, 1998 through March 27, 1999.  It is the actions of the parties under the terms of the second contract (and later ones) that are at issue. There is no dispute that the contractual relationship lasted until 2005, and neither side claims that later written contracts varied

1

in any material terms from the 1998-99 contract.  However, all more recent contracts were lost during Hurricane Katrina.

The so-called second contract provided:

> The Handyman Show, Inc. agrees to provide 52 weeks of The Handyman Show, Inc for telecasting on WVUE-TV FOX 8.  The Handyman Show agrees to pay $1,250 commissionable at 15% and $100 non-commissionable for station costs per 30 minutes of time and telecasting (and production.) [sic] Telecast time is Saturdays at 6:30 a.m. to 7:00 a.m. for 52 weeks on WVUE-TV FOX 8 TV.
>
> In addition, WVUE-TV FOX 8 agrees to provide 1 hour per week for the production of The Handyman Show, Inc. at station's convenience currently Tuesdays 6:45 p.m. to 7:45 p.m. Individual sponsor commercials may be produced during this period, any post editing to be done at stations convenience.  Shared station and show promotion spots also to be produced at station's convenience.   The Handyman Show, Inc. agrees to full payment to the director (currently Brian Reimer).
>
> Furthermore, WVUE-TV FOX 8 agrees to telecast up to 42 - 30-second WVUE-TV FOX 8 TV and The Handyman shared promotional spots per week. These spots are to run between 6 a.m. and midnight, seven days per week.

The Handyman Show was produced and aired under the terms of this and later contracts until 2005.  The defendant stored the videotapes of these shows at its television station facilities in New Orleans.  During Hurricane Katrina, the facilities flooded, causing extensive damage to the defendant's property and destroying more than half of the videotapes of The Handyman Show.  The plaintiff now sues the defendant and its insurance companies for

2

the loss of 437 videotapes.[1]

The defendant moves for summary judgment, claiming that it, and not the plaintiff, owns the copyright to The Handyman Show, as well as the physical videotapes.  The defendant alleges that it is the "author" of the show and that the plaintiff cannot prove that the show was a "work for hire," which would transfer the copyright to the plaintiff.

Regardless of the ownership of the tapes, the defendant claims that it is not liable because there was no contract requiring the defendant to store the tapes.  The defendant also urges that it was not negligent in its storage of the tapes because it owed no duty to the plaintiff.  The defendant observes that, at most, the tapes were a gratuitous deposit, and regardless of whether it was a gratuitous or an onerous deposit, the station is not responsible for the loss of the tapes because the loss was the result of the hurricane, an "irresistible force."

Finally, the defendant points out that the tapes have no value, either as physical videotapes or intellectual property.[2]

---

[1]   The plaintiff, in answers to the defendant's interrogatories, states that 286 videotapes of the show were salvaged from the defendant's facilities after Hurricane Katrina.

[2]   The defendant explains that the tapes require specialized equipment to play them, which is out of date, and that most TV stations would be unable to play the tapes.  Further, the defendant points to a negative article in the *Times Picayune* regarding the star of The Handyman Show, Craig Loewe, no television station would have any interest in purchasing the rights to air the show.

3

The plaintiff counters that it owns the copyright and the tapes of The Handyman Show.  The plaintiff claims that it paid for the use of the defendant's facility as well as the cost of tapes and talent used for each show.  The plaintiff insists that it was agreed that the defendant would store the tapes on the second floor of the building.  Because the defendant moved the tapes to the first floor of the building (well before Hurricane Katrina hit New Orleans), the plaintiff charges that the defendant breached their contract and acted negligently in failing to safely store the video tapes.  Plaintiff adds that the tapes have value and that it is in negotiations with several television stations to air The Handyman Show, including even an agreement with a television station in New Orleans.

In support of its contentions, the plaintiff submits copies of checks paid to the defendant, the affidavit of Gregory Buisson, the general manager of the television station when the plaintiff and the defendant first began their relationship, and an affidavit of Wallace Dorion.

I.

Rule 56 of the Federal Rules of Civil Procedure instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact

4

to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  Id. at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987).  Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party and may not make credibility determinations or weigh the evidence.  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000).

II.

A.

Summary judgment is not appropriate in this case because genuine issues of material fact remain in dispute and cannot be summarily resolved on this record.

Defendant insists that it, as the television station that produced the show, is the author of The Handyman Show, and, therefore, owns the copyright.  Further, the defendant claims that the show is not a work for hire under 17 U.S.C. § 101,[3] and, as a result, the station retains all copyrights associated with the show.  This Court need not reach the issue of whether the show is a work for hire because even if it is, this issue of law is intimately intertwined with serious fact issues about authorship.

---

[3] "Work for hire" is defined as: "(1) a work prepared by an employee within the scope of his or her employment; or (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire. For the purpose of the foregoing sentence, a "supplementary work" is a work prepared for publication as a secondary adjunct to a work by another author for the purpose of introducing, concluding, illustrating, explaining, revising, commenting upon, or assisting in the use of the other work, such as forewords, afterwords, pictorial illustrations, maps, charts, tables, editorial notes, musical arrangements, answer material for tests, bibliographies, appendixes, and indexes, and an "instructional text" is a literary, pictorial, or graphic work prepared for publication and with the purpose of use in systematic instructional activities."

The defendant invokes <u>Easter Seal Society for Crippled Children and Adults of La. V. Playboy Enters.</u> 815 F.2d 323 (5th Cir. 1987). In that case, a TV station filmed a staged Mardi Gras parade and musical "jam session." <u>Id.</u> at 324. The defendant focuses on the court's holding that absent an employer/employee relationship or express agreement in the contract, the filmed event was not a work for hire. <u>Id.</u> at 334-35. The court held that the television station owned the copyright. <u>Id.</u> at 337. But the court of appeals went on to add, however, that "at least the musical performance - if not the staged parade - was a work of authorship that needed only fixation to be copyrightable." <u>Id.</u> The court found that in that case, "the process of fixation was also sufficiently creative and original to be a work of authorship." <u>Id.</u> The court concluded that "the tapes of the musical performances were interdependent joint works of authorship" by the performers and the television station. <u>Id.</u>

The defendant concedes that the "star of The Handyman Show - the Handyman - is Craig Loewe." Further, in an affidavit, Joe Cook states that all personnel *other than Craig Loewe* were provided by the defendant in the production of the show. Finally, the defendant admits that without the credibility of Mr. Loewe, the intellectual property of the show has no value. It seems arguable - or at least a material issue of fact to be resolved at trial - that the plaintiff contributed enough to the production of the show

7

to make it a co-author of a joint work as discussed in <u>Easter</u> <u>Seals</u>.[4]   <u>See</u> <u>id.</u> at 337.

Next, the defendant claims that it did not breach a contract with the plaintiff because it had no contractual responsibility to safeguard the tapes.  No provisions exist in the written contract regarding whether or how the tapes are to be stored.  However, the affidavit of Gregory Buisson submitted by the plaintiff states that "[i]t was always understood between WVUE and the Handyman Show, Inc. that the station would both store and take care of the videotapes on the second floor of the building."  Defendant stresses that "implausible" claims by the plaintiff are not sufficient to overcome a motion for summary judgment.   <u>See</u> <u>Matsushita</u>, 475 U.S. at 587.  But this Court has no authority to make credibility determinations or weigh the evidence.  <u>See</u> <u>Reeves</u>, 530 U.S. at 150.  The record before the Court betrays entitlement to summary relief.

The one copy of the contract that has been entered into the record makes no mention of videotapes.  In Louisiana, parol evidence is admissible "to show that the writing is only a part of an entire oral contract between the parties."  <u>Scafidi v. Johnson</u>,

---

[4] If the plaintiff is a joint author with the defendant, then both have the equal right to use the material.  "Joint authorship entitles the co-authors to equal undivided interests in the whole work-in other words, each joint author has the right to use or to license the work as he or she wishes, subject only to the obligation to account to the other joint owner for any profits that are made."  <u>Thomson v. Larson</u>, 147 F.3d 195, 199 (2d Cir. 1998).

420 So. 2d 1113, 1115 (La. 1982).  Further, the written contract does not state that it is the complete agreement between the parties.[5]

The defendant next claims that it was not negligent in its handling of the tapes.  Negligence is "conduct which falls below the standard of care established by law for the protection of others against an unreasonable risk of harm."  Detraz v. Lee, 05-1263, p. 8 (La. 1/17/07), 950 So. 2d 557, 562.  Quite obviously, a fact-driven inquiry.

## B.

The civil law concept of deposit, an issue defendant raises, is similar to the common law concept of bailments.  Coe Oil Serv., Inc. v. Hair, 283 So. 2d 734, 736 n.1 (La. 1937).  The Louisiana Civil Code defines a deposit as "a contract by which a person, the depositor, delivers a movable thing to another person, the depositary, for safekeeping under the obligation of returning it to the depositor upon demand."  La. Civ. Code art. 2926.  The Code further provides the standards that govern the depositary's obligations: if the deposit is onerous (compensated), "with diligence and prudence" and if the deposit is gratuitous, "with the same diligence and prudence in caring for the thing deposited that

---

[5] The defendant states that "more significant than Mr. Buisson's understanding in 1998 are the statements of the station managers for WVUE who came after Mr. Buisson's termination."  Such an argument serves only to focus on how unsuited this record is for a Rule 56 motion.

he uses for his own property." La. Civ. Code art. 2930. Further, "[w]hether the deposit is gratuitous or onerous, the depositary is liable for the loss that the depositor sustains as a result of the depositary's failure to perform such obligations."[6] Id.

"When a deposit is not returned as made, a presumption arises of the depositary's negligence or fault" and the burden shifts to the depositary to show that he was not negligent. Nat'l Auto. Ins. Co. v. Champ's New Orleans Collision Ctr., 06-1144, p. 3 (La. App. 4 Cir. 2/28/2007), 954 So. 2d 197, 199. Further "[a] depositary is not an insurer of the deposit, but he owes a duty to exercise reasonable care to take precautions against reasonable foreseeable damage to the deposited property." Id.

The defendant points to comment © of article 2930, which states that "[n]either the gratuitous nor the onerous depositary is liable for loss or deterioration of the thing deposited that has resulted from an 'irresistible force,' that is, force majeure, in the absence of a special undertaking." Hurricane Katrina has been

---

[6] The defendant argues that the deposit was gratuitous. The Court need not reach this issue, but notes that Mr. Buisson states the defendant used the tapes as a "space filler," airing the show when it lacked programming for a particular time slot. As noted by the court in Coe, "[t]he compensation for accepting deposit of a thing need not consist of a storage fee, but may, as here, consist of some other economic advantage received by the depositary as part of the consideration for accepting the deposit." 283 So. 2d at 738. If the plaintiff's evidence is true, the defendant gained a benefit from the storage of the tapes, and the deposit could then be considered onerous, or compensated. But the issues regarding deposit are mixed ones of law and fact and cannot be resolved in motion practice.

held to be an "irresistible force." Champs, 954 So. 2d at 199. The ultimate fact inquiry, though, remains whether the depositary exercised reasonable care to take precautions against reasonably foreseeable damage.

The defendant relies on Champs, which held that a depositary was not liable for damage to deposited items during Hurricane Katrina. The court there noted, however, that the defendant in that case took action to prevent damage to the deposited property. Id. at 200; see also Coex Coffee Int'l v. Dupuy Storage & Forwarding, LLC, 06-4798, p. 1 (E.D. La. 4/28/08), 2008 WL 1884041.

For the foregoing reasons, the defendant's Motion for Summary Judgment is DENIED.


New Orleans, Louisiana, September 24, 2008.


MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE